IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VERNON M. GREENE, #351126     *
             Plaintiff,
    v.                      *  CIVIL ACTION NO. DKC-09-1023

WARDEN KATHLEEN GREEN     *
NURSE FLORENCE BENDIX
             Defendants.     *
                          ***

## MEMORANDUM OPINION

I. *Procedural History*

      This 42 U.S.C. § 1983 prisoner civil rights action for "monetary" and punitive damages alleges the denial of medical care at the Eastern Correctional Institution ("ECI").  In his original and court-ordered Supplemental Complaints, Plaintiff states that in the early morning hours of April 17, 2009, he experienced chest pain, sharp muscle spasms, and "complications" with breathing.  Paper Nos. 1 & 4.  He contends that he was first seen by "Nurse Tina" who took his vital signs and gauged his blood pressure to be 158/100.  Plaintiff claims that he was immediately taken to the medical department by a mobile transport cart.  He states that upon his arrival, his blood pressure reading taken by Nurse Florence Bendix was 165/97, and a prison physician was called and advised of his condition.  Nurse Bendix took an EKG, which Plaintiff alleges showed a "heart condition."   He claims that despite these readings, muscle spasms, and his "light-headed" condition, Bendix directed that he be returned to his housing unit.   Plaintiff asserts that after he was returned to his unit, he began to vomit and was taken back to the medical unit where his blood pressure was again taken by Bendix and read as 179/98.  He alleges that Bendix again sent him back to his cell.  Plaintiff complains that he felt extremely ill, dehydrated, and light-headed and fell on his face, "busting my

forehead open." He was subsequently taken by wheelchair to the medical department for the third time. His blood pressure was read by a nurse as 158/102 and he was seen by a physician and diagnosed with an "enlarged heart" and hypertension.[1] Plaintiff states that he was not given any medication for headaches he attributes to his fall. Paper Nos. 1 & 4.

Plaintiff complains that Nurse Bendix's actions in continually sending him back to his cell despite his extreme high blood pressure readings "displayed deliberate indifference, negligence, and no concern." He names ECI Warden Green and Nurse Florence Bendix as Defendants.

Defendants have filed Motions for Dismiss or, in the Alternative, Motions for Summary Judgment (Paper Nos. 20 & 22) and Plaintiff has filed Oppositions thereto. Paper Nos. 26 & 27. A hearing is not needed to resolve the constitutional issues presented in the matter. *See* Local Rule 105.6. (D. Md. 2009). For reasons which follow, the court shall grant Defendants' Motions.

II. *Standard of Review*

*Motion for Summary Judgment*

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex*, 477 U.S. at 322-323. Therefore,

---

[1]     In attachments to his Supplemental Complaint, Plaintiff appears to assert that the physician

2

on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In alleging that he was denied his Eighth Amendment right to necessary medical care, Plaintiff must prove two essential elements. First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If he proves this first element, Plaintiff must then prove the second "subjective" component of the Eighth Amendment standard by showing deliberate indifference on the part of Defendants. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Medical staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that he risk to which the facts gave rise was insubstantial or nonexistent."[2] *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

---

placed him on a seven-day daily blood pressure check, but he did not receive checks on three of those days. Paper No. 4 at p. 8.

[2]     Under 42 U.S.C. § 1983, liability on the part of Warden Green requires a showing that she: (1) failed promptly to provide Plaintiff with needed medical care; (2) deliberately interfered with the

3

"[A]ny negligence or malpractice on the part of ....doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones* 145 F. 3d at 166. Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id.* at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge).

III.   *Analysis*

Bendix argues that Plaintiff has failed to state a claim upon which relief may be granted and that, in the alternative, there is no genuine dispute as to any material fact and she is entitled to judgment as a matter of law.  According to her dispositive pleading, which relies on the affidavit of Dr. David Mathis and Plaintiff's medical record, on April 2, 2009, Plaintiff filed a sick-call request complaint of stomach pains, night sweats, migraine headaches, fatigue, light-headedness, and loss of appetite.   Paper No. 22 at Ex. A; Ex. B at p. 1.  The form was received on April 4, 2009.  Plaintiff noted that he had been given an antibiotic for an abdominal incision.  The nurse who followed the encounter form indicated that Plaintiff had been seen by a physician's assistant ("P.A.") on April 17, 2009.

On April 17, 2009, Bendix evaluated Plaintiff at 2:42 a.m for his complaints of chest pain and shortness of breath.  Paper No. 22, Exs. A & B.  His pulse was 85 and respiratory rate was 22, which, accordingly to Dr. Mathis are "only slightly elevated."   His oxygen saturation level was

---

performance of medical personnel; or (3) tacitly authorized or was indifferent to medical personnel's constitutional violations. *See Miltier v. Beorn*, 896 F. 2d at 854 (internal citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)

100%. His blood pressure ("BP") was elevated at 179/98. Bendix's examination showed that Plaintiff's skin was warm and dry, his chest was clear, and he did not appear to be in any distress. Bendix performed an EKG, which showed an "incomplete right bundle branch block" ("IRBBB")[3] and left ventricular hypertrophy ("LVH").[4] Bendix referred Plaintiff to the physician or P.A. for evaluation and treatment and he was returned to his cell. At 5:42 a.m. Plaintiff returned to the dispensary complaining of vomiting. Nurse Bendix was informed by a correctional officer that the vomitus was clear. Plaintiff's vital signs were taken. His pulse was 73, his respiratory rate was 20, his oxygen saturation level remained at 100%, and his BP was still elevated at 165/97. Bendix advised Plaintiff that he would be seen by the physician or P.A. later that morning for further evaluation. He acknowledges that he was evaluated by P.A. Ford later that day.

On April 18, 2009, Plaintiff filed another sick-call form complaining of headaches after his fall from the previous day. He indicated that Ford had said he would prescribe him Motrin, but he had not received the medication. A sick-call request was also filed on April 19, 2009, again asking for Motrin. Nurse Jennifer Daly noted on April 20, 2009, that the Motrin had not been ordered.

On April 20, 2009, Ford evaluated Plaintiff and found him to have an elevated BP of 158/102. Ford noted that Plaintiff had had multiple recorded elevated BP readings. He recommended that Plaintiff be started on hydrochlorothiazide ("HCTZ"), a diuretic, and Lisinopril

---

[3]    An IRBBB is a condition in which the electrical impulse moves through the heart more slowly than normal, causing the ventricle to contract slightly later than normal. Dr. Mathis affirms that an IRBBB often has no significance at all and requires no treatment. Incomplete BBB, especially when it occurs on the right side (IRBBB), often has no significance and in general should trigger a non-invasive search for underlying heart disease. *See* http://heartdisease/about/com/cs/arrhythimias/a/BBB_4.htm.

[4]    According to Dr. Mathis, LVH is an enlargement of the muscle tissue of the left lower chamber of the heart. LVH develops in response to some factor, such as high blood pressure, that requires the

(for hypertension), with BP checks, a cardiovascular diet, and laboratory testing including a CBC, lipid profile, and liver and thyroid panels.   Paper No. 22 at Ex. A; Ex. B at pgs. 8 & 9.   Ford prescribed Tylenol Extra Strength Arthritis for Plaintiff for future headaches, as at that time Plaintiff denied complaints of neck or head pain from his fall three days earlier.

On April 22, 2009, Plaintiff filed a sick-call form complaining of painful throbbing headaches from an April 17, 2009 injury.   He indicated that he had not been treated for the injury. Defendant Bendix states that starting April 24, 2009, Plaintiff's BP was checked daily.   Readings ranged from a low of 130/80 to a high of 150/100.   BP medications were given to him as a "keep on person," for self-dispensing.   *Id.*, Ex. A; Ex. B at pgs. 11-13.

In her dispositive motion, Defendant Green argues that the Complaint against her is subject to dismissal because no facts are alleged against her and Plaintiff failed to fully exhaust his administrative remedies.   Paper No. 20.

In his Opposition responses, Plaintiff claims that it is a material fact that Nurse Bendix was fully aware of his light-headedness, chest pain, and elevated BP, yet had him returned to his segregation housing unit after only briefly conducting BP readings.   Paper No. 26.   He alleges that she was "negligent towards my health care."   He argues that Bendix could have admitted him to the hospital for observation until a physician came to monitor his status in light of repeated high BP readings, the abnormal EKG, and severe muscle spasms.   He claims that he continues to suffer from headaches from his fall where he "busted his forehead."[5]   Plaintiff further alleges that: Warden

---

left ventricle to work harder.  *See* http://mayoclinic.com/health/left-ventricular-hypertrophy/DS00680.
       [5]     Plaintiff alleges that although lab work was ordered in April of 2009, it has not been performed.  He claims this shows a lack of concern on the part of P.A. Ford and Dr. Mathis.  Paper No. 26. Neither Ford nor Mathis, however, are parties to this case.

Green is the "overseer" of ECI and its medical staff; he has filed numerous administrative complaints concerning the lack of proper medical care, only to have them dismissed and not investigated seriously; and he has written Warden Green personally and she has heard from Prison Rights Information System of Maryland, Inc. ("PRISM"), yet nothing has changed. Paper No. 27. He further argues that he has exhausted his administrative remedies.[6]  *Id.*

The original and Supplemental Complaints relate to the care provided Plaintiff by Nurse Bendix during the morning hours of April 17, 2009.  Bendix twice examined Plaintiff during a three-hour time period from 2:42 a.m. to 5:42 a.m.   She twice took his vital signs, listened to his subjective complaints, communicated with Dr. Mathis, ordered an EKG, and scheduled Plaintiff to be evaluated by a P.A. or physician later that morning.   Plaintiff's BP readings were high, his pulse and respiratory rates were slightly elevated, his blood oxygen saturation never deviated from 100% levels, and his skin was warm and dry.  While Plaintiff claims that Bendix should have at least admitted him to the hospital for observation until a physician could see him, the court finds his disagreement with her decision to send him back to his cell until he could be seen by a P.A. or physician inadequate to support an Eighth Amendment claim under 42 U.S.C. § 1983.

Further, there is no evidence that supervisory officials, such as Warden Green, interfered with Plaintiff's medical care or were aware of deliberate indifference in the care he received on April 17, 2009 and disregarded or tacitly authorized same.   Further, while Plaintiff argues that he

---

[6]     Plaintiff's materials show that he filed a remedy regarding his April 17, 2009 medical treatment with the ECI Warden (Remedy Case No. ECI  2127-09).  Paper No. 27, Ex. C.  There is no definitive showing, however, that he took an appeal from that decision to Division of Correction Headquarters and to the Inmate Grievance Office before filing this Complaint.  Paper No. 27, Exs. A & B.

exhausted his administrative remedies, his materials do not sufficiently refute Green's affirmative defense.

III.     *Conclusion*

For the aforementioned reasons, Defendants' Motions to Dismiss or for Summary Judgment, construed as Motion for Summary Judgment, are hereby granted.   Judgment is entered in favor of Defendants and against Plaintiff.  A separate Order follows.


Date:    January 5, 2010                          _____/s/_____
                                                  DEBORAH K. CHASANOW
                                                  United States District Judge